IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CHARLES SLAUGHTER,           )
                             )
    Plaintiff,               )
                             )   CIVIL ACTION NO.
v.                           )
                             )   00-AR-3313-S
MCWANE CAST IRON PIPE COMPANY,)
                             )
    Defendant.               )

**MEMORANDUM OPINION**

Before this court is the motion for summary judgment of defendant, McWane Cast Iron Pipe Company ("Mcwane"), against plaintiff, Charles Slaughter ("Slaughter"). Slaughter filed this action against Mcwane complaining that while he was employed by McWane, his foreman, Russell Lathers ("Lathers"), sexually harassed him in violation of Title VII of the Civil Rights Act of 1964; that Lathers, while acting within the line and scope of his authority, invaded Slaughter's privacy in violation of Alabama law; that McWane retaliated against him for complaining of his harassment; and that McWane negligently supervised and retained Lathers. Slaughter has since withdrawn his retaliation claim. Thus, only the harassment claim and the two state tort claims remain.

**<u>Undisputed Pertinent Facts</u>**

On August 3, 1999, McWane hired Slaughter to work in an area known as the "twenty foot finishing department" to cover for the various workers while they were at lunch or on break.  Lathers was hired on October 16, 1999 as the foreman in charge of the twenty foot finishing department. Consequently, Lathers was the foreman in charge of Slaughter.  Mike Mitchell ("Mitchell"), the general foreman, was Lathers' immediate superior.

The parties disagree over most of the details surrounding the interactions that form the heart of this controversy, but some facts are undisputed.  In early November, Lathers, in what seems to be an attempt at humor, asked Slaughter if he knew the first symptom of AIDS.  Lathers then told Slaughter that the first symptom was "a sharp pain in the ass."  Lathers maintains that this is a joke, and that it is funny.  Around this time, Lathers made another failed attempt at humor.  Lathers asked Slaughter, who is black, if he had any Indian in him.  When Slaughter replied that he had no Indian ancestry, Lathers offered to put some "Indian" into Slaughter.  Lathers has since testified that these comments, which he also believes qualify as a joke, refer to the "insert[ion of] your penis into somebody's ass."  Slaughter complained to Mitchell about Lathers' behavior.  After the passage of a few months, the history of which is in dispute, Slaughter was fired on January 7, 2000.

### Disputed Facts

When considering a summary judgment motion, all disputes of fact are resolved in favor of the non-moving party, who in this case is Slaughter. This said, the court continues with the disturbing narrative, filling many of the gaps with dispiuted facts construed in Slaughter's favor.

In October, Lathers told a joke in the presence of Slaughter that involved sexual relations between a horse and a donkey. Lathers has also stood very close behind Slaughter, told another joke of the caliber recounted earlier and made a comment that referred to a bishop. Also, while Slaughter was trying to remove a jammed pipe with a short rod, Lathers attempted to help him by pulling on the same short rod. This violated the custom which dictates that a helper either use his own short rod or help the primary puller only if he is using a long rod. On November 5, 1999, Lathers asked Slaughter if he had ever had his "shit packed." Slaughter immediately left the area. When this court needs to refer to this again, it will call it the "S.P." comment, so as not to offend the reader any more than is necessary.

After receiving Slaughter's complaint regarding this incident, Mitchell reported it to John Walsh ("Walsh"), the director of human resources. Walsh convened a meeting in which he attempted to smooth over the incident and even got Lathers to

apologize to Slaughter.[1]  No disciplinary action was ever taken against Lathers.  Distraught from these events, Slaughter was unable to sleep that night, and called in sick the next day.  Upon returning to work the following day, Lathers disciplined Slaughter for this absence.  Not long after, one of Slaughter's fellow employees told Slaughter that Lathers was waiting in a darkened office for him and was ready to put some "Indian" into him.  Slaughter filed a written grievance with his Union representative.  Around the middle of November, Slaughter, at a meeting on an unrelated issue, again repeated, in the presence of John Walsh, that Lathers had sexually harassing him.

Some time after the first meeting, Slaughter was weighing pipes and recording their weight, a task normally done by only one person because the work area is not big enough to accommodate two people.  Lathers entered this work area and, according to Slaughter, their bodies rubbed against one another.  Lathers' behavior was strange enough to cause Dewberry, the employee whom Slaughter had been relieving, to ask upon return why Lathers was up there with Slaughter, and to then offer the answer that Lathers "must be a pervert or gay or something."  (Pl. Depo. at 97).  Shortly before this incident, perhaps the day before,

---

[1] It was at this meeting that Walsh explained to Slaughter that "[t]his is a foundry, not McDonald's. The environment is loud and dirty. Workers tend to kid around in this environment." (Pl.'s Oppn. to Def. Mot. for Summ. J. at 3).  Until it read Walsh's statement, this court did not know that McDonald's had replaced the Junior League or Ladies Garden Club as the standard of decorum, civility and cleanliness.

4

Slaughter alleges that Lathers stood closely behind him.  This incident was also observed by Dewberry and prompted him to again ask why Lathers was that close, and to again offer the answer that Lathers "must be a pervert or gay or something."  (Pl. Depo. at 193).  Finally, there may have been a second incident where Lathers stood closely behind Slaughter while Slaughter tried to pull a pipe from the oven.  (Pl. Depo. at 209-13).

### Analysis

> To establish a hostile-environment sexual-harassment claim under Title VII based on harassment by a supervisor, an employee must show: (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Mendoza v. Borden*, 195 F. 3d 1238, 1245 (11th. Cir. 1999).  In order to survive summary judgment, a plaintiff must prove that he can muster enough evidence to allow a reasonable jury to find for him on all of the above elements.  McWane argues that Slaughter cannot meet criteria three, four and five.

In order to be actionable under Title VII, the harassment must be on account of the victim's sex.  Many

courts have held that sexually tinged epithets do not in and of themselves qualify as harassment on account of sex. In the instant case, though, Lathers did not merely insult Slaughter by using locker room parlance of a sexual nature, rather, viewing the evidence in a light most favorable to Slaughter, Lathers propositioned Slaughter to engage in anal receptive intercourse. Lathers testified that he meant his comments as a joke. Maybe he did. This court finds, though, that when a superior offers to sodomize a subordinate the way that Lathers allegedly did offer to Slaughter, there is at least a triable issue for the fact-finder as to whether the harassment is based on the sex of the employee. Slaughter has therefore met his summary judgment burden as it relates to the third criterion.

McWane's next attack on Slaughter's case is that he cannot meet the burden imposed by the fourth criterion of severity and pervasiveness. Like most defendants praying for summary judgment on a Title VII claim, McWane has cataloged for the court, in a single-spaced ten-point footnote that consumes almost an entire page, a litany of cases where the victim was subject to behavior allegedly more odious than that allegedly perpetrated on Slaughter by Lathers, yet was granted summary judgment. Like the typical defendant, McWane has now moved the court to grant summary

6

judgment because its behavior was not nearly as reprehensible as those in the cited cases. The reviewing court must then evaluate, analyze, and compare the various propositions, obscenities, gropes, and gestures that constitute sexual harassment in order to determine if they are severe enough to constitute actionable sexual harassment. It is upon that distasteful task that this court now embarks.

  The sum of Slaughter's allegations are as follows. Lathers, in Slaughter's presence, told the AIDS joke, a joke regarding a horse and a donkey having sex and made some comment regarding a bishop. Lathers twice propositioned Slaughter by offering to insert some "Indian" into Slaughter and by making the S.P. comment. Finally, Lathers stood very close to Slaughter on two occasions and on another Lathers rubbed against Slaughter while the two were in a closely confined work space. To guide its decision, this court needs either a case where more pernicious conduct was found not actionable or a case where less pernicious conduct was found to be actionable. McWane's cases fulfill the former category, but Slaughter's cases do not fulfill the latter. For example, Slaughter cites *Dees v. Johnson Controls World Services*, in which the following activity was held to rise to the standard necessary to be actionable:

7

> This almost-daily abuse took a variety of forms, from sexually explicit stories and jokes, to comments about her body or those of male firefighters, to physical harassment. On one particularly humiliating occasion, Jacobs asked Dees to sit on his lap. When she refused, Jacobs picked her up and squeezed her so hard that she urinated in her pants. Jacobs, laughing, then told the other firefighters what had happened. On another occasion, Stewart ground his groin into Dees' buttocks after stating "look at that sexy mama, I could just eat you in that skirt." Rainey propositioned Dees on a number of occasions, whispering in her ear that she was "the kind of woman I like; you're not only beautiful, you're hot-blooded," or telling her that she needed a "sugar daddy" and that with a body like hers, she would not have to work if she listened to him. On numerous other instances, the four men grabbed or slapped Dees' buttocks, groped her leg, or otherwise touched her in a sexually suggestive manner.

168 F. 3d 417, 418-19 (11th Cir. 1999). Despicable as Lathers' alleged conduct is, it is not as bad, in this court's opinion, as that recounted in *Dees*. McWane has cited cases where courts found behavior worse than that alleged by Slaughter to be not actionable, but none of these cases are from the Eleventh Circuit.

    The Eleventh Circuit analyzes the fourth criterion using four sub-criteria. They are "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct

8

unreasonably interferes with the employee's job performance." *Gupta v. Florida Board of Regents*, 212 F. 3d 571, 584 (11th Cir. 2000)(*internal citation omitted*).

In the instant case, Slaughter alleges five comments, one physical touching, and two instances where Lathers stood very close to Slaughter. This averages out to one incident for every one and a half weeks that Slaughter worked with Lathers, so this first sub-criterion does not lean for or against either side. Of the eight alleged incidents of harassment, most consisted of distasteful comments. Two of these comments, the S.P. and the Indian, were severe. Neither the touching nor the two incidents where Lathers stood near Slaughter were very severe. A jury could find that the S.P. and Indian comment were enough to cross from mere offensiveness into the realm of physically threatening or humiliating, and thus were severe. The second and third sub-criteria are met. Finally, Slaughter says that on one occasion he stayed home from work because of Lathers' harassment. Because of this one occasion, the questioned conduct allegedly interfered with Slaughter's job performance. The sum total of all of this harassment may not be much, but this court finds that it does meet three of the four *Gupta* sub-criteria and is therefore actionable under Title VII.

McWane argues that even if Slaughter has amassed enough evidence to meet the first four criteria cited in *Mendoza*, he cannot meet the fifth criterion necessary for holding McWane liable. To defeat Slaughter's claim, McWane asserts the *Faragher/Ellerth* affirmative defense. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), *and Burlington Industries v. Ellerth*, 524 U.S. 742 (1998). As McWane points out, this is really not an attack on Slaughter's prima facie case, so much as it is an affirmative defense. This court agrees with that characterization, and will treat it accordingly. In order to prevail on its motion for summary judgment, McWane needs to demonstrate that, even if all the evidence is viewed in a light most favorable to Slaughter, no reasonable jury could find anything but that McWane has met its burden of proving this defense.

The *Faragher/Ellerth* affirmative defense protects employers who can show that "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Industries v. Ellerth*, 524 U.S. 742, 765 (1998).

The first element has two sub-parts; prevention and

10

correction.  McWane has clearly met its obligation for prevention by promulgating and distributing to its employees a valid sexual harassment policy.  When Walsh was made aware of Slaughter's complaint, he immediately called a meeting, told Lathers that his behavior was unacceptable, and even had Lathers apologize to Slaughter.  After Walsh's attempted correction, Lathers allegedly physically harassed Slaughter.  Walsh's remedy may have been ineffective.  If perfection were required of McWane, this ineffectiveness would defeat its claim to the *Faragher/Ellerth* affirmative defense.  Because Walsh's actions, in light of what McWane knew, even when viewing the disputed evidence in a light most favorable to Slaughter, were objectively reasonable, McWane has satisfied the first criterion of the affirmative defense.

Walsh told Slaughter that if there were any further incidents of harassment, Slaughter was to report them to Walsh.  Walsh's invitation to Slaughter was enough to qualify as "a preventive or corrective opportunit[y] provided by the employer."  *See Id*.  Walsh, though, went even further by repeatedly asking Slaughter if Lathers continued to harass him.  Slaughter always denied being harassed.  This court cannot conceive of what more Walsh could have done to ferret out the incident at the scales.  Slaughter failed to take advantage of these corrective

11

opportunities. This court holds as a matter of law that when an employer asks an employee if he has been harassed, and the employee falsely answers that he has not been harassed, the employee has "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer." *Id.* Because there is no dispute of fact that Slaughter failed to tell Walsh, upon being asked, of this additional incident of alleged harassment, McWane has met its burden. Therefore, summary judgment is due to be granted on the Title VII claim.

This court's jurisdiction in this case is founded upon the federal question claim that it will dismiss. Were this court sitting in diversity, it would very likely grant summary judgment on Slaughter's state law claims. Instead, this court will dismiss the state law claims without prejudice, so that they can be tested before a state court judge.

By separate order, this court will grant McWane's motion for summary judgment on the Title VII claim and will dismiss, without prejudice, Slaughter's state law claims.

DONE this 6th day of March, 2002.

                                                WILLIAM M. ACKER, JR.
                                                UNITED STATES DISTRICT JUDGE